UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>TINA M. HOLSTROM,<br><br>    Defendant. | NO. CR-05-6026-EFS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

On November 4, 2005, the Court held a pretrial conference in the above-captioned case and heard argument on Defendant Tina Holstrom's Motion to Dismiss (Ct. Rec. 16). Ms. Holstrom was present for the hearing and represented by Ms. Rebecca Pennell. Mr. Jared Kimball appeared on behalf of the Government. After considering the parties' arguments and relevant authority, the Court is fully informed on the issues and hereby grants Ms. Holstrom's Motion to Dismiss.

**I. Background**

In September 2000, Ms. Holstrom was hired by Battelle Memorial Institute ("Battelle") to work as a Science and Engineering Associate for Battelle at the Pacific Northwest National Laboratory ("PNNL"). Pursuant to a contract, Battelle operated the PNNL as the prime contractor for the United States Department of Energy ("DOE") at PNNL (the "PNNL Contract").

ORDER ~ 1

During her employment at PNNL, Ms. Holstrom was supervised at different times by two different Battelle managers, who were responsible for certifying Ms. Holstrom's time cards for Battelle's payroll system and conducting Ms. Holstrom's performance reviews. It is undisputed that at all times, Ms. Holstrom was an employee of PNNL as operated by Battelle, not the federal government.[1] In fact, the PNNL Contract explicitly assigns responsibility for employees to Battelle: "[t]he Contractor shall be responsible for maintaining satisfactory standards of employee competency, conduct, and integrity and shall be responsible for taking such disciplinary action with respect to its employees as may be necessary." (Ct. Rec. 52-2, Ex. J, I-78(c), 1-101.)  PNNL's offer of employment to Ms. Holstrom specifically noted that her employment was at will under the laws of the State of Washington and nothing therein explicitly stated or implied that she was an employee of the federal government. (Ct. Rec. 52-2, Ex. K.)

In February 2005, Battelle's Internal Audit Department ("Audit Department") conducted an investigation into whether Ms. Holstrom was providing truthful information in her electronic Battelle time cards. As a result of this investigation, the Audit Department ultimately concluded Ms. Holstrom, by providing false information in her electronic time cards, had received $42,671.42 in wages for days she had not worked

---

[1] As the Court explains below, when reading the PNNL Contract, the offer of employment, and the termination letter together, the Court concludes, as a practical matter, it is correct to refer to Ms. Holstrom as an employee of Battelle.

ORDER ~ 2

and caused a total loss of $96,600.00 to PNNL's overhead account. Pursuant to the PNNL Contract, Battelle's bank is allowed to draw money directly from the United States Treasury for operational costs, *i.e.* employee payroll, associated with the PNNL Contract between Battelle and DOE.

At the conclusion of the Audit Department's investigation, Ms. Holstrom's employment with Battelle at PNNL was terminated in a memorandum issued by Battelle on Battelle stationery. [Doc.17-1, Ex.G] Thereafter, the Audit Department forwarded its investigative report of Ms. Holstrom's alleged misconduct to DOE's Office of Inspector General ("DOE-OIG"), which began its own investigation of the alleged false statements contained in Ms. Holstrom's electronic time cards. During an interview with DOE-OIG special agents, Ms. Holstrom purportedly admitted she had falsely completed her electronic time cards.

Ms. Holstrom was indicted for making materially false statements in violation of 18 U.S.C. § 1001. Specifically, the Government alleges Ms. Holstrom knowingly and willfully falsified electronic time cards for her hours of work at PNNL from January 1, 2003, to February 25, 2005, and because this conduct allegedly fell within the jurisdiction of DOE, a federal agency, the conduct is criminally punishable under § 1001.

**II. Analysis**

The Government "must prove five elements to obtain a conviction for making a false statement under § 1001: (1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction." *Id.* (citing *United States v. Boone*, 951 F.2d 1526, 1544 (9th Cir. 1991)). In her motion, Ms. Holstrom claims the Government is unable to prove the

ORDER ~ 3

fifth element of its § 1001 charge because, as she argues, her alleged false statements were not made within DOE's jurisdiction. Thus, to avoid dismissal of its § 1001 charge against Ms. Holstrom, the Government must establish Ms. Holstrom's alleged false statements were made "within the jurisdiction of a department or agency of the United States." *United States v. Camper*, 384 F.3d 1073, 1075 (9th Cir. 2004).

### A. Supreme Court Guidance

The term "jurisdiction," as used in § 1001, is not statutorily defined. However, the Supreme Court has provided guidance on the term's meaning and scope. First, the Supreme Court stressed that "the term 'jurisdiction' should not be given a narrow or technical meaning for purposes of § 1001." *Bryson v. United States*, 396 U.S. 64, 70 (1969). Second, for jurisdiction to exist under § 1001, the federal department or agency must have "the power to exercise authority in [the] particular situation" in which the false statement arose. *United States v. Rodgers*, 466 U.S. 475, 479 (1984); *accord United States v. Green*, 745 F.2d 1205, 1208 (9th Cir. 1985) (the false statement must "relate to a matter in which a federal agency has power to act"). Thus, false statements are subject to § 1001 prosecution only when they "concern the 'authorized functions of an agency or department' rather than 'matters peripheral to the business of that body.'" *United States v. Fachinni*, 874 F.2d 638, 641 (9th Cir. 1989) (quoting *Rodgers*, 466 U.S. at 479).

### B. Ninth Circuit Guidance

In rulings consistent with the cited Supreme Court authority, the Ninth Circuit has provided additional guidance on the meaning and scope of "jurisdiction" as used in § 1001.

ORDER ~ 4

### 1. *United States v. Facchini*

In *Facchini*, the Ninth Circuit analyzed § 1001's jurisdiction requirement in the context of false statements made by individuals seeking benefits from a state unemployment compensation agency ("state agency"). 874 F.2d at 638. The court in *Facchini* divided the case's defendants into two classes: (1) those who made false statements to obtain benefits *funded by the state government* and distributed by the state agency ("Class One") and (2) those defendants who made false statements to obtain benefits *funded by the federal government,* but distributed by the state agency ("Class Two"). *Id.* at 640-41. Ultimately, the Ninth Circuit ruled the false statements made by Class One defendants were not within the jurisdiction of a federal agency, while the false statements made by the Class Two defendants were. The court's ruling was primarily based on its findings that no "direct relationship" existed between the Class One defendants' false statements and an authorized function of a federal agency or department, while a "direct relationship" did exist with regard to the Class Two defendants' false statements. *Id.* at 641-43. To understand the Ninth Circuit's decision in *Facchini* it is necessary to understand the distinct relationships existing between the federal government and state agency with regard to the funding of unemployment benefits and extended unemployment benefits and the administrative costs of the state agency.

By federal statute, the state was permitted to create and implement an unemployment compensation program approved by the United States Secretary of Labor. *Id.* at 640. Once approved, the state agency was allowed to award state funds to eligible individuals and began receiving

ORDER ~ 5

federal administrative funds for operational costs. *Id.* Additionally, by statute, the Secretary of Labor was authorized to monitor the administrative structure of the state program and could stop payment of administrative funds if the state improperly *denied* benefits. *Id.* at 640-42. Despite this power, the Secretary of Labor was not permitted to monitor the state program's actual operations or withhold administrative funds if the state improperly *awarded* benefits on fraudulent claims. *Id.* at 642. In short, applicants received unemployment benefits funded by the state; the federal government funded the state program's administrative costs, not these initial unemployment benefits.

By comparison, the Class Two defendants received unemployment benefits funded by a federally established program that was administered by the state agency ("federal program"). *Id.* at 640-41. The federal program provided federal benefits to eligible individuals after they exhausted their right to benefits under the state program. *Id.* In contrast to state program applicants, federal program applicants were expressly made subject to § 1001 prosecution for false statements made in attempting to obtain federally-funded benefits. *Id.* at 643 (citing 26 U.S.C. § 3304).

Based on the Secretary of Labor's limited oversight of the state program and inability to act in response to false statements made to the state agency, the Ninth Circuit in *Facchini* found there was no direct relationship between the Class One defendants' false statements and an authorized function of the Secretary of State. *Id.* at 642. Instead, the Class One defendants' false statements were deemed to have been merely "peripheral" to the Secretary of Labor's monitoring function. *Id.* As

ORDER ~ 6

such, the Class One defendants' false statements did not fall within the Secretary of Labor's jurisdiction for § 1001 purposes. *Id.*

However, as to the Class Two defendants' false statements, the court in *Facchini* arrived at the opposite conclusion. In differentiating between the two classes of defendants, the court emphasized the Government's statutory authority to prosecute the Class Two defendants under § 1001 and the fact that federal funds were used to pay benefits. *Id.* at 643. The court believed the federal source of funds created a "direct relation between the falsity of [the] statements and the Department of Labor's statutory function of certifying the payment of federal money for unemployment compensation." *Id.*

### 2. Other Federal Benefit Cases

The Ninth Circuit's decision in *Facchini* is consistent with other decisions rendered in similar § 1001 cases where defendants were prosecuted for making false statements to third parties in attempts to fraudulently obtain federal benefits. Like *Rodgers* and *Facchini*, the following cases emphasize the need for a nexus between a false statement and an authorized function of a federal agency or department before § 1001 jurisdiction may be found.

For instance, in *United States v. Kraude*, a case rendered prior to the *Rodgers* and *Facchini*, the Ninth Circuit ruled that false statements made to a private health insurance carrier to fraudulently obtain federal medicare payments were within the jurisdiction of the Department of Health, Education, and Welfare because the false statements had a material effect on the department's function, which presumably was to properly disperse federal medicare benefits. 467 F.2d 37, 38 (9th Cir.

ORDER ~ 7

1972); *accord United States v. Mantanky*, 482 F.2d 1319, 1322 (9th Cir. 1973).

Similarly, in *United States v. Stanford*, also decided prior to *Rodgers* and *Facchini*, the Seventh Circuit held that false statements made to a state agency to fraudulently obtain federally-funded food stamps and Aid to Families with Dependent Children ("AFDC") benefits are within the § 1001 jurisdiction of the Departments of Health, Education, and Welfare and Agriculture based on the strong auditing and oversight powers these federal departments have over the state agencies that disburse federal food stamps and AFDC benefits. 589 F.2d 285, 297 (7th Cir. 1978). In fashioning this decision, the Seventh Circuit emphasized its belief that while Congress had entrusted administration of federal food stamp and ADFC programs to the states, the Departments of Health, Education, and Welfare and Agriculture retained the "ultimate authority" to see that federal funds were properly spent. *Id.*

### 3. *United States v. Green*

In *United States v. Green*, the Ninth Circuit determined the Nuclear Regulatory Commission ("NRC") had jurisdiction over false statements made by the employee (the "defendant") of a potential subcontractor to a governmental prime contractor. 745 F.2d 1205, 1208-09 (9th Cir. 1985). The defendant was the quality assurance director for a company that manufactured chemical coatings. In an attempt to secure a contract with a governmental prime contractor to supply coatings for use in a Level I area of a nuclear power plant, the defendant supplied false safety-test reports to the prime contractor. *Id.* at 1207. The reports related to

safety standards required by the NRC, which the defendant's company was required to pass before it could be awarded the subcontract. *Id.*

In ruling on whether sufficient evidence had been presented at trial to prove § 1001's jurisdiction requirement, the Ninth Circuit stated:

> [u]nder section 1001, the false statement need not be made directly to the government agency; it is only necessary that the statement relate to a matter in which a federal agency has power to act.
>
> The test reports falsified by [the defendant] concerned materials to be used in a Level I area of a nuclear power plant. In order for these materials to qualify for use in Level I, they were required by NRC to pass safety-related tests. The jury could have concluded that Green's false statements related to a matter which was the concern of a federal agency.

*Id.* at 1208-09. Despite the succinctness of the ruling, its basis rings clear. The NRC had jurisdiction over the defendant's false statements to the prime contractor because the statements related to a matter in which the NRC had the power to act. In other words, there was a direct relationship between the defendant's false statements and the NRC's authorized function of ensuring compliance with nuclear safety regulations.

**C. Ruling**

Based on the rulings described above,[2] the Court finds Ms. Holstrom's alleged false statements were not made within DOE's jurisdiction as required by § 1001. Although PNNL is owned by the United

---

[2] Because Supreme Court and Ninth Circuit authority provides adequate guidance on the issues raised in this motion, the Court does not respond to nor address the Fifth and Eleventh Circuit cases briefed by the parties.

ORDER ~ 9

States Government and Battelle has a direct contractual relationship with DOE, nothing before the Court demonstrates that DOE, or any other federal department or agency, had power to act with regard to Ms. Holstrom's alleged falsification of time cards.  Instead, the evidence demonstrates Ms. Holstrom's alleged falsification of time cards is peripheral to DOE's obligations and not directly related to any DOE authorized function.

Further, the Government has pointed to no express statutory authority to prosecute Ms. Holstrom under § 1001, as was the case for the Class Two defendants in *Facchini* where 26 U.S.C. § 3304 authorized § 1001 prosecution.  Furthermore, the Government has cited no authority for the proposition that DOE, having hired Battelle to operate PNNL, retained ultimate authority to see that federal funds designated for PNNL operations were properly spent, as was emphasized in *Facchini, Kraude*, and *Standford*.  Finally, the Government has failed to show that any terms of the PNNL Contract provided DOE with any power to act in response to Ms. Holstrom's alleged falsification of time cards as contrasted to *Green* where the government had the power to act to insure compliance with nuclear safety regulations.

To the contrary, the evidence establishes Ms. Holstrom's alleged false statements fall outside DOE's authority to act.  The clearest evidence of this is found in the terms of the PNNL Contract in which Battelle and DOE agreed Battelle was wholly responsible "for the total performance under the Contract," including all "disciplinary action with respect to [Battelle's] employees as may be necessary." (Ct. Rec. 52-2 at 1 &4.)  In light of this PNNL Contract language and upon review of the offer of employment and the termination letter, the Court finds Ms.

Holstrom is, for practical purposes, an employee of Battelle. Consequently, because Battelle, not the government, had all power to act[3] with regard to Ms. Holstrom's alleged false statements on time cards, there is no agency jurisdiction as that term is used in § 1001. Therefore, the Indictment charging Ms. Holstrom with a § 1001 violation must be dismissed.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss **(Ct. Rec. 16)** is **GRANTED**.
2. All pending motions are **DENIED AS MOOT**.
3. The **jury trial** set for **January 23, 2005**, is **STRICKEN**.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this order and to provide copies to counsel, the U.S. Probation Office, and the Jury Administrator.

**DATED** this 14th day of December, 2005.

                                     S/ Edward F. Shea
                                      EDWARD F. SHEA
                              United States District Judge

Q:\Criminal\2005\6026.dismiss.12.14.final.wpd

---

[3] The Court need not consider whether DOE was authorized to withhold funds from Battelle or in any way punish Battelle for Ms. Holstrom's alleged misconduct since such action would be collateral to and not directly related to the alleged false statements as required for a finding of § 1001 jurisdiction under *Facchini*. 874 F.2d at 640-41.

ORDER ~ 11